IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALISSA STROUSE,                         :    CIVIL ACTION
                                        :    NO. 12-4417
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
ENHANCED RECOVERY COMPANY, L.L.C.,      :
                                        :
          Defendant.                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          July 29, 2013


          Alissa Strouse (Plaintiff) brings this action under

the Fair Debt Collections Practices Act (FDCPA) and the

Pennsylvania Fair Credit Extension Uniformity Act (FCEUA)

against Enhanced Recovery Company, L.L.C. (Defendant). Defendant

moved for summary judgment. For the reasons that follow, the

Court will grant in part and deny in part Defendant's Motion for

Summary Judgment.


## I.   BACKGROUND[1]

          Plaintiff is a resident of Wheaton, Maryland. Compl.

¶ 1, ECF No. 1. Defendant is a debt-collection company

incorporated in Delaware with its principle place of business in

---

[1]      The Court states the following facts in the light most
favorable to Plaintiff and draws all reasonable inferences in
Plaintiff's favor.

Jacksonville, Florida. Id. ¶¶ 2-3. Defendant performs collection activities within Pennsylvania and throughout the United States. Id. ¶ 2.

Plaintiff claims that Defendant violated the FDCPA and the FCEUA because on January 6, 2012, Defendant sent a letter addressed to Plaintiff seeking payment of a $701.28 delinquent Sprint debt to her parent's house in Warminster, Pennsylvania, where she had not resided since April 2010. Def.'s Mot. Summ. J. Ex. B.

On January 19, 2012, Plaintiff's attorney sent Defendant a letter titled "Dispute of Claims," indicating that Plaintiff disputed the validity of the debt referenced in the January 6th letter. See id. Ex. C. In the Dispute of Claims, Plaintiff's counsel informed Defendant that all future contact with Plaintiff should be directed to Plaintiff's counsel. Id. at 1. Further, Plaintiff's counsel demanded that Defendant verify the alleged debt by providing a copy of the contract between Plaintiff and Sprint. Id.

On February 2, 2012, an envelope containing nine pages of delinquent billing invoices that named the account holder as "Aliissa Strouse,"[2] residing at a Philadelphia location to which Plaintiff has never been, was received at Plaintiff's parents'

---

[2]	Note the additional "i" in "Aliisa."

residence in Warminster. Id. Exs. D & E. But the letter did not provide Defendant's name on or within the envelope, include the requested Sprint contract, or indicate that it was sent in response to Plaintiff's request. On February 9, 2012, Plaintiff's counsel responded to Defendant by letter, in which she claimed Plaintiff never had a Sprint account and complained that Defendant violated her instruction to cease direct communication with Plaintiff. Id. Ex. F, at 1-2. On February 24, 2012, Plaintiff's counsel sent yet another letter to Defendant, indicating that she had received neither the requested contract nor the "Fraud Package" that, during a phone conversation with Plaintiff's counsel, a Sprint representative promised would be forthcoming. Id. Ex. G. In the letter, Plaintiff's counsel requested that Defendant deliver both documents to her office by March 2, 2012. Id.

But two days earlier, on February 22, 2012, Defendant mailed the Fraud Package, issued through "Sprint Fraud Management," to Plaintiff's parents' residence, requesting that Plaintiff prove she was not the holder of the account in interest. Id. Ex. H. On the first page, the Fraud Package stated: "This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose." Id. at 3. Defendant claims that it sent the Fraud Packet "in response to Plaintiff's assertion that she did not own the Account in

question" and that the Fraud Packet was part of "an attempt to complete an investigation into Plaintiff's claim that the debt was disputed." Def.'s Mot. Summ J. ¶ 6, ECF No. 18. Plaintiff's counsel again responded by letter to Defendant on February 27, 2012, expressing concern that Defendant sent the Fraud Package to Plaintiff at her parent's house as opposed to Plaintiff's counsel. Id. Ex. I.

On March 6, 2012, Defendant sent a letter to Plaintiff's counsel indicating that the account at issue had been closed. Id. Ex. K. On March 14, 2012, Plaintiff's counsel received a letter from Defendant stating that the agency submitted a deletion request with credit-reporting bureaus to resolve Plaintiff's issue. Id. Ex. L. On March 20, 2012, Plaintiff's counsel received a letter from Sprint's Consumer Finance Services Department indicating that the account balance had been adjusted to $0 and that it made a request to have the reporting removed from credit-reporting bureaus. Compl. Ex. P-14.

## II.  PROCEDURAL HISTORY

On August 6, 2012, Plaintiff filed the instant Complaint, asserting the following FDCPA claims against Defendant: (1) communicating with third parties in connection with the collection of a debt, in violation of 15 U.S.C.

§ 1692c(b); (2) contacting Plaintiff after being advised to cease communication, in violation of § 1692c(c); (3) failing to disclose in subsequent communications that the communication is from a debt collector, in violation of § 1692e(11); and (4) generally unfair and unconscionable means against Plaintiff in attempting to collect a debt which she did not owe, in violation of § 1692f.[3] Further, Plaintiff asserts that Defendant violated the FCEUA. 73 Pa. Cons. Stat. § 2270.4(a) (2013).

Defendant responded, claiming that there was no violation of the FDCPA. Answer ¶ 69, ECF No. 8. Defendant further asserted five affirmative defenses. Id. at 9-10. On January 17, 2013, Defendant made a $4000 offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. Def.'s Offer of J., ECF No. 17. Plaintiff did not respond.

On March 11, 2013, Defendant filed the instant Motion for Summary Judgment. Def.'s Mot. Summ. J. Plaintiff responded. Pl.'s Resp. The matter is now ripe for disposition.

---

[3]     In her Complaint, Plaintiff mistakenly claims that Defendant violated § 1692f "by using false representations and deceptive means to collect a debt from Plaintiff which she did not owe." Comp. ¶ 69(F). This language actually refers to § 1692e's general provision. However, the parties agree that § 1692f's prohibition against unfair and unconscionable means in collecting or attempting to collect a debt is the claim at issue. See Def.'s Mot. Summ. J. 11-13; Pl.'s Resp. 14, ECF No. 19.

### III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV. DISCUSSION**

Defendant moves for summary judgment on all of Plaintiff's claims. For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

Under the FDCPA, a debt collector may not engage in abusive practices in connection with the collection of a debt. See 15 U.S.C. § 1692(e) (2006).[4] The statute provides a private cause of action against noncompliant debt collectors. 15 U.S.C. § 1692k (2006 & Supp. V 2011). The alleged abusive debt practices in this case include improper communication with a third party concerning the collection of a debt; contacting a debtor after being advised to cease communication; failing to disclose in subsequent written communication that a debt collector is attempting to collect a debt; and using unfair and unconscionable means against a debtor in collecting or attempting to collect a debt that was not owed.

---

[4] Such practices "contribute to the number of personal bankruptcies, to marriage instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress stated that the FDCPA's purpose was to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. § 1692(e).

The FDCPA is a remedial statute and the Court "construe[s] its language broadly, so as to effect its purpose." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). "In order to give effect to the Act's intent to protect[] the gullible as well as the shrewd, courts have analyzed the statutory requirements from the perspective of the least sophisticated debtor." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008) (alteration in original) (citations and internal quotation marks omitted). The least sophisticated debtor standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection law." Brown, 464 F.3d at 453. For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Wilson v. Quadramed, 225 F.3d 350, 354 (3d Cir. 2000)). Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown, 464 F.3d at 454.

Although the least sophisticated debtor standard is very low, it nonetheless "safeguards bill-collectors from liability for 'bizarre or idiosyncratic interpretations of collection notice' by preserving at least a modicum of

reasonableness, as well as 'presuming a basic level of understanding and willingness to read with care [on the part of the recipient].'" Campuzano-Burgos, 550 F.3d at 299 (alteration in original) (quoting Wilson, 225 F.3d at 354-55). The statute does not protect "the willfully blind or non-observant." Id. "Even the least sophisticated debtor is bound to read collection notices in their entirety." Id. (citing Fed. Home Loan Mort. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007)). What is more, the FDCPA is "not intended to shield even unsophisticated consumers from the embarrassment and inconvenience which are the natural consequences of a debt collection process." Higgins v. Capitol Credit Servs., Inc., 762 F. Supp. 1128, 1135 (D. Del. 1991) (citation omitted). This is because Congress enacted the FDCPA "to protect consumers . . . without imposing unnecessary restrictions on ethical debt collectors." Id. (quoting S. Rep. No. 95-382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).

A.  Standing

Defendant argues that Plaintiff lacks standing to sue under §§ 1692c(b), 1692c(c), and 1692e(11) because she is not the debtor and does not fall under the broader definition of "consumer" as set forth in §§ 1692a(3) and 1692c(d). For the reasons that follow, the Court finds that Plaintiff does have

standing to bring claims under §§ 1692c(b), 1692c(c), and
1692e(11).

Generally, the FDCPA grants a cause of action to "any
person" wronged by a debt collector. 15 U.S.C. § 1692k(a).
"Federal courts interpret Section 1692k(a) as a broad grant
available to persons who are not obligated or allegedly
obligated to pay the debt that the defendant sought to collect."
Wenrich v. Robert E. Cole, P.C., No. CIV. A. 00-2588, 2001 WL
4994, at *3 (E.D. Pa. Dec. 22, 2000). However, "[u]nder certain
sections of the FDCPA, a plaintiff must be a 'consumer' as
defined in the FDCPA to have a cause of action because those
sections define violations in terms of conduct directed toward a
'consumer.'" Id. at *4. The FDCPA defines a consumer as "any
natural person obligated or allegedly obligated to pay any
debt," 15 U.S.C. § 1692a(3) (2006 & Supp. V 2011).

Courts in this district and elsewhere have required a
plaintiff bringing claims under certain FDCPA subsections,
including §§ 1692c and 1692e, to be a "consumer" as defined in
§ 1692c(d). E.g., Shand-Pistilli v. Prof'l Account Servs., Inc.,
No. 10-CV-1808, 2010 WL 2978029, at *3 n.1 (E.D. Pa. July 26,
2010) ("The FDCPA permits debt collectors to communicate with
the consumer or the consumer's spouse."); Cole v. Toll, No. 07-
590, 2007 WL 4105382, at *7 (E.D. Pa. Nov. 16, 2007)
(determining that plaintiffs did not have standing to sue under

§ 1692e(11), because they were not consumers as defined in §§ 1692a(3) and 1692c(d)); <u>Wenrich</u>, 2001 WL 4994, at *4; <u>see also</u> <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 696–97 (6th Cir. 2003) (quoting <u>Wright v. Fin. Serv. of Norwalk</u>, 22 F.3d 647, 649 n.1 (6th Cir. 1994)) ("'Only a "consumer" has standing to sue for violations under 15 U.S.C. § 1692c.'"); <u>Bank v. Pentagroup Fin., L.L.C.</u>, No. 08-CV-5293(JG)(RML), 2009 WL 1606420, at *12-13 (E.D.N.Y. June 9, 2009) (same); <u>Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.</u>, No. 99 CIV. 3227(JGK), 2000 WL 1448635, at *5 (S.D.N.Y. Sept. 28, 2000) ("[C]ertain sections of the FDCPA are violated only by certain conduct toward a 'consumer.'").[5]

Defendant argues that Plaintiff is not a consumer because she admittedly did not owe the debt arising from the overdue account. However, a consumer is defined not just as someone obligated to pay a debt, but as someone either obligated or <u>allegedly obligated</u> to pay a debt. 15 U.S.C. § 1692a(3). Though the account was eventually closed without payment, Defendant sent multiple letters and delinquent billing notices,

---

[5] This standing analysis is not applicable to Plaintiff's claim under § 1692f, which is governed by § 1692k. See <u>Christy v. EOS CCA</u>, 905 F. Supp. 2d 648, 654 (E.D. Pa. 2012) (Robreno, J.). Section 1692k permits "any person" wronged by a debt to bring a cause of action under the statute. Even if the Court determines that Plaintiff is not a "consumer" under the FDCPA, she would have standing (so long as she suffered a cognizable injury-in-fact) to bring a §1692f claim.

addressed to "Aliisa Strouse," to Plaintiff's parents' residence. Defendant's various responses also treated Plaintiff as if she were obligated on the debt and challenged her to prove she was not the debtor. This correspondence constituted an allegation that Plaintiff was obligated to pay the debt. Therefore, Plaintiff has standing to bring her claims under §§ 1692c(b), 1692c(c), and 1692e(11).

B. Communicating with Third Parties in Violation of § 1692c(b)

Defendant also argues that Plaintiff fails to assert a viable claim under § 1692c(b), which prohibits unauthorized disclosures to third parties in connection with the collection of a debt, for two reasons. First, Defendant argues that it addressed its communications to "Aliissa Strouse" and did not communicate with Plaintiff's parents. Second, it argues that the communications were not in connection with the collection of any debt.

The FDCPA prohibits debt collectors from communicating with third parties "in connection with the collection of any debt." 15 U.S.C. § 1692c(b) (2006). Courts in this Circuit have held that § 1692c(b) should be broadly construed. See, e.g., Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 589, 601 (E.D. Pa. 2012). For example, debt collectors violate § 1692c(b) by harassing unobligated family members and by leaving messages

on answering machines that children and parents could hear. <u>FTC v. Check Enforcement</u>, No. CIV.A. 03-2115(JWB), 2005 WL 1677480, at *8 (D.N.J. July 18, 2005).

The Third Circuit has listed several factors as pertinent in determining whether a communication is "in connection with the collection of any debt." These include (1) whether the communication "demand[s] the personal payment of money"; (2) whether the communication "suggest[s] that if the recipient did not have sufficient funds available, payment could be made in full under an installment plan"; and (3) generally, whether the communication could be interpreted by the least sophisticated debtor as an attempt to collect a debt. <u>Piper v. Portnoff Law Assocs., Ltd.</u>, 396 F.3d 227, 233-34 (3d Cir. 2005) (citing <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 396-97, 400 (3d Cir. 2000)).

Here, Defendant did not communicate with a third party. Defendant did not leave messages on an answering machine and did not attempt to communicate with Plaintiff's parents or any other person (aside from Plaintiff's counsel) directly. Defendant addressed all its communications to either "Aliissa Strouse" or counsel. Plaintiff has not alleged that either of her parents is named Aliissa Strouse.

However, the two communications sent to Plaintiff's parents' home—the envelope of billing statements and the Fraud

Package—are in connection with the collection of a debt. The Fraud Package sent to Plaintiff's parents' residence is clearly such a communication. The third page, under the heading "Federal Notice," states: "This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose." Def.'s Mot. Summ. J. Ex. H, at 3. Even the least sophisticated debtor could infer intent to collect a debt from this language.

The envelope containing various billing statements, although less clear, was also in connection with the collection of a debt under the least sophisticated debtor standard. Defendant claims that the statements were sent per Plaintiff's request, but this claim is meritless. Plaintiff asked that a contract between her and Sprint—not billing statements—be sent to her attorney, not to her parents' residence.[6] Instead, Defendant sent four Sprint bills to the residence that on each front page state: "Hello! Unfortunately, your account is past due. Please pay the total below immediately. . . . Total Due: 701.28." Def.'s Mot. Summ J. Ex. E, at 2, 5, 8. Defendant failed to include a statement clarifying that the documents were sent as requested or in lieu of a written agreement. Even if Plaintiff was expecting the requested contract to be sent to her

---

[6]     The fact that Defendant was unable to procure the requested contract, see Def.'s Mot. Summ. J. Ex. O, is of no merit. Defendant could have easily said so in its envelope that included the billing statements.

parents' home, which she was not, a bare envelope with four

billing statements that request immediate payment is a far cry

from a contract. Under the least sophisticated debtor standard,

such a communication, without more, is an attempt to collect a

debt. But because the letters do not qualify as communications

with a third party, Defendant is not in violation of § 1692c(b),

and the claim must be dismissed.


      C.    <u>Contacting Plaintiff After Being Advised to Cease
Communication in Violation of 15 U.S.C. § 1692c(c)</u>

      Defendant argues that it did not violate § 1692c(c)

because the communications sent to Plaintiff were not sent in an

attempt to collect a debt. Instead, Defendant contends, the

communications were sent in response to Plaintiff's dispute of

the debt and request for validation. Section 1692c(c) states, in

pertinent part:

> If a consumer notifies a debt collector in writing
> that the consumer refuses to pay a debt or that the
> consumer wishes the debt collector to cease further
> communication with the consumer, the debt collector
> shall not communicate further with the consumer with
> respect to such debt, except:
>
> (1) To advise the consumer that the debt collector's
> further efforts are being terminated;
>
> (2) To notify the consumer that the debt collector or
> creditor may invoke specified remedies which are
> ordinarily invoked by such debt collector or
> creditor; or

> (3) Where applicable, to notify the consumer that the
>     debt collector or creditor intends to invoke a
>     specified remedy.

15 U.S.C. § 1692c(c). Therefore, an alleged debtor must directly

inform the debt collector in writing that he or she refuses to

pay the debt or that communications should cease before he or

she can bring a claim under § 1692c(c).

Although not fully addressed in this circuit, other

federal courts have held that a debt collector violates

§ 1692c(c) where the alleged debtor provides the required

notification in writing along with a direction to forward all

future communications to counsel, but the debt collector ignores

that direction and continues to communicate with the debtor

directly. See, e.g, Montgomery v. Shermeta, Adams & Von Allmen,

P.C., 885 F. Supp. 2d 849, 854-56 (W.D. Mich. 2012); Isham v.

Gurstel, Staloch & Chargo, P.A., 738 F. Supp. 2d 986, 992-95 (D.

Az. 2010); Micare v. Foster & Garbus, 132 F. Supp. 2d 77, 80-81

(N.D.N.Y. 2001).[7]

---

[7]     Usually, claims relating to a debt collector's
unlawful communication with a debtor known to be represented by
counsel are brought under § 1692c(a)(2). However, because
notification that a debtor is represented by counsel often comes
in the same communication as a cease-and-desist request, as in
this case, the two tend to go hand-in-hand. See, e.g.,
Montgomery, 885 F. Supp. 2d at 854-56; Isham, 738 F. Supp. 2d at
992-95; Micare, 132 F. Supp. 2d at 80-81; Degonzague v. Weiss,
Neuren & Neuren, 89 F. Supp. 2d 282, 284 (N.D.N.Y. 2000).

In her January 19, 2012, letter to Defendant, Plaintiff's counsel specifically requested that future communications be sent to Plaintiff's counsel and not to Plaintiff directly. See Def.'s Mot. Summ. J. Ex. C, at 1-2. The request is functionally a cease-and-desist letter. Defendant's argument that its subsequent communications were not attempts to collect a debt is misplaced, as discussed above. Likewise, Defendant's reliance on Gannon v. IC Systems, Inc., No. 09-60302-CIV, 2009 WL 2075244 (S.D. Fla. 2009), for the principle that a debt collector's communication in response to a validation request is an exception to the rule against ceasing communications, is also misplaced. In that case, the debt collector included in its responsive communication a cover letter that made clear that the debt was paid and that there was no balance due. Id. at *3.

Here, Defendant made no such effort to show Plaintiff that the billing statements were in response to a request for information. Instead, the statements demand immediate payment of the debt. Further, Defendant was not, in fact, responding to Plaintiff's request at all—Plaintiff did not request statements, but rather a copy of the alleged contract between her and Sprint. She also requested that the information be sent to counsel. Without question, to the least sophisticated debtor, these statements are an attempt to collect a debt. And regarding

the Fraud Package, as mentioned above, the contents of the mailing made clear that it served as part of Defendant's attempt to collect the Sprint debt.

Therefore, although Defendant's communications were allegedly in response to Plaintiff's request, Plaintiff's claim under § 1692c(c) withstands summary judgment.


D. <u>Failing to Disclose in Subsequent Communications that the Communication is from a Debt Collector in Violation of § 1692e(11)</u>

Plaintiff also claims § 1692e(11), that Defendant violated § 1692e(11) by failing to disclose in subsequent communications to an initial demand for payment—specifically the billing statements and Fraud Package—that the communications were from a debt collector. Section 1692e provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .

> (11) . . . [T]he failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

18 U.S.C. § 1692e(11) (2006).

Plaintiff argues that Defendant violated § 1692e(11) by failing to identify the source of the two mailings. Defendant correctly points out that the Fraud Packet satisfied this requirement. Thus, the only communication at issue is the envelope containing the billing statements. As with the other

claims, Defendant argues that the mailing was not an attempt to collect a debt and does not fall under the purview of the FDCPA. But, as discussed supra Part IV.A, under the least sophisticated debtor standard, this communication is part of Defendant's attempt to collect a debt. Therefore, Plaintiff's § 1692e(11) claim as it relates to the billing statements also withstands summary judgment.

## E. Using Unfair and Unconscionable Means to Attempt to Collect a Debt in Violation of § 1692f

Plaintiff argues that her poor treatment by the Defendant, including its "persistent pattern of unfair and unconscionable conduct," constitute unfair and unconscionable means by Defendant in attempting to collect the Sprint debt. Defendant argues that because Plaintiff knew she was not the debtor, its actions are insufficient to sustain a claim under § 1692f.

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f (2006). The section lists eight instances of conduct found to be unfair or unconscionable and, therefore, in violation of the FDCPA. See id. § 1692f(1)-(8). Also, the opening paragraph of § 1692f serves as a catch-all that broadly prohibits unfair or unconscionable means to collect or attempt to collect a debt. Hoover, 888 F. Supp. 2d at 601. But "[a]

complaint will be deemed deficient under [§ 1692f] if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA." <u>Shandi-Pistilli</u>, 2010 WL 2978029, at *6 (quoting <u>Foti v. NCO Fin. Sys., Inc.</u>, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006). Plaintiff does, in fact, rely only on Defendant's act of mailing the billing statements and Fraud Package as the basis for her § 1692f claim. Because Plaintiff failed to allege other conduct that was unfair and unconscionable under § 1692f, summary judgment for Defendant is warranted as to this claim.

### F.    Pennsylvania Fair Credit Extension Uniformity Act

The FCEUA states: "It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 Pa. Cons. Stat. § 2270.4(a) (2013). Because Plaintiff prevails on some of her FDCPA claims, she prevails under her FCEUA claim. The Court will therefore deny Defendant's motion as to this claim.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's claims under 15 U.S.C. §§ 1692c(b) and 1692f and deny the Motion as to

20

Plaintiff's claims under § 1692c(c), § 1692e(11), and the FCEUA.

An appropriate order will follow.